## STATE FARM FIRE & CASUALTY INSURANCE COMPANY, Plaintiff-Respondent,

v.

## Jimmy J. WALKER, Defendant-Co-Appellant,
## Joan MOSBY, Defendant-Appellant.†

Court of Appeals

*No. 89-1272. Submitted on briefs March 29, 1990.—Decided July 25, 1990.*

(Also reported in 459 N.W.2d 605.)

† Petition to review filed. This petition was not disposed of at the time the volume went to press. Its disposition will be reported in a later volume.

460

On behalf of the defendant-appellant, the cause was submitted on the briefs of *Jeffrey P. Patterson* of *Braden & Olson* of Lake Geneva.

On behalf of the defendant-co-appellant, the cause was submitted on the brief of *Michael D. Brennan* of *Brennan Law Office* of Williams Bay.

On behalf of the plaintiff-respondent, the cause was submitted on the brief of *Robert C. Burrell* of *Borgelt, Powell, Peterson & Frauen, S.C.,* of Milwaukee.

Before Nettesheim, P.J., Brown and Scott, JJ.

BROWN, J. The appellants in this fire insurance case challenge a summary judgment that declared their fire insurance null and void and dismissed their claims for punitive damages against the insurance company. We affirm.

The case presents two issues. The first issue is whether an insurance company may deny recovery to an innocent insured when a co-owner of the policy breaches a clause in the insurance contract barring recovery if there is concealment or fraud by one of the insureds. The second issue is whether an insured can justify refusing to answer all questions during an investigation of an insurance claim by invoking his fifth amendment privilege and objecting to the questions as immaterial.

Joan Mosby and Jimmy Walker were joint owners of a fire insurance policy on their home. On September 1, 1987, two fires occurred at the house. The second fire began a few hours after firefighters had extinguished the first fire, and the second fire completely destroyed the house and its contents.

During an investigation of the fires, the state fire marshall discovered an outstanding Colorado warrant for Walker's arrest on homicide charges. Walker was incarcerated during the extradition proceedings. As part of the investigation of Walker's and Mosby's fire insurance claims, State Farm's attorney questioned Walker under oath in jail.

Walker refused to answer several questions, some of which concerned when he began using the name Jimmy Walker rather than his birth name, Glenn Joe Martini.

Walker claimed that he did not have to answer the questions because they were immaterial to the insurance policy and because the fifth amendment protected his refusal to answer possibly incriminating questions. State Farm denied both Mosby's and Walker's fire insurance claims for recovery because it concluded that Walker had set the fire, had engaged in fraud and false swearing, and had violated the terms of the insurance contract by concealment.

State Farm sought a declaratory judgment affirming its denial of recovery. Mosby and Walker counterclaimed for both compensatory and punitive damages. Walker alleged that State Farm had exercised bad faith in denying him recovery because State Farm exploited his position as a suspect of a homicide by asking him questions that were not material to the insurance policy and by ignoring his fifth amendment objections to the questions. Mosby alleged that State Farm had exercised bad faith in denying her recovery because she was innocent of any wrongdoing or breach of contract imputed to Walker.

The circuit court granted summary judgment to State Farm on both the punitive damages and compensatory damages claims. The court decided that there was sufficient circumstantial evidence for a jury to conclude that Walker had committed arson. Furthermore, the court concluded that the questions asked of Walker in jail were material to the insurance contract and did not violate Walker's constitutional right to avoid self-incrimination. The court also concluded that Walker had breached the concealment clause of the insurance contract by refusing to answer material questions of the insurance investigator. Finally, the court held that Mosby was not entitled to recovery, even though she was an innocent insured, because the clear and unambiguous

language of the concealment clause prevents both a guilty and an innocent insured from recovering when any insured breaches the contract by concealment or fraud.

The court of appeals reviews decisions on summary judgment *de novo. Vultaggio v. General Motors Corp.,* 145 Wis. 2d 874, 881, 429 N.W.2d 93, 95 (Ct. App. 1988). The appeals court will reverse a summary judgment only if the record shows that material facts are in dispute or if the trial court incorrectly applied the law. *Garvey v. Buhler,* 146 Wis. 2d 281, 287–88, 430 N.W.2d 616, 619 (Ct. App. 1988). Neither appellant has maintained that there is a dispute regarding material facts, nor do we find such a dispute on the record. Where the facts are undisputed it is purely a question of law.

## BAD FAITH ISSUES

The trial court correctly dismissed Walker's and Mosby's claims for bad faith and the consequent punitive damages claim. An insurance company cannot commit the tort of bad faith if its obligation to indemnify the insured is "fairly debatable." *Mowry v. Badger State Mut. Casualty Co.,* 129 Wis. 2d 496, 516, 385 N.W.2d 171, 180 (1986). Moreover, even where bad faith can be proved, punitive damages are not always appropriate. *Anderson v. Continental Ins. Co.,* 85 Wis. 2d 675, 697, 271 N.W.2d 368, 379 (1978). For punitive damages to be awarded, there must be a showing of an evil intent deserving of punishment, or special ill-will, or wanton disregard of duty, or gross or outrageous conduct. *Id.* State Farm's obligation to indemnify Walker and Mosby for their fire loss was "fairly debatable," and there is no evidence that State Farm acted with an evil intent or in

an outrageous manner when it denied Walker's and Mosby's insurance claims.

An insurance company's denial of benefits is "fairly debatable" when there is a reasonable basis for the company's action. *See id.* at 691, 271 N.W.2d at 376. State Farm's denial of Walker's claim was reasonable because circumstantial evidence indicated that at least the second fire had been intentionally caused by Walker. The fire investigators concluded that the fires had been set with accelerants. The firefighters who extinguished the first fire reported that Walker made remarks raising the inference that he intended to finish the burning of the house later in the night. Walker was alone at the house between the two fires, and he could not describe his actions in that time period. Moreover, Walker would not cooperate with the state fire marshall's investigation of the fire. Circumstantial evidence such as this is sufficient for an insurance company to invoke the arson exclusion clause and deny recovery to the insured. *See Gregory's Continental Coiffures & Boutique, Inc. v. St. Paul Fire & Marine Ins. Co.,* 536 F.2d 1187, 1191–92 (7th Cir. 1976).

As to Mosby, State Farm focuses upon the policy's concealment clause in arguing that there existed a reasonable basis for denying her claim. The clause states:

> **2. Concealment or Fraud.** If *you or any other insured* under this policy has intentionally concealed or misrepresented any material fact or circumstance relating to this insurance, whether before or after a loss, then this policy is void as to you and any other *insured.* [Emphasis added.]

State Farm interpreted the concealment clause as denying recovery to all insureds when one insured is guilty of

concealment or fraud. According to State Farm's interpretation, Walker concealed information by refusing to answer questions, and thereby voided the policy as to Mosby.

We hold that the policy's concealment clause established a reasonable basis for State Farm to deny Mosby's claim. Thus, State Farm's action was "fairly debatable" and cannot be the subject of a bad faith punitive damages claim. *See Anderson,* 85 Wis. 2d at 697, 271 N.W.2d at 379. Moreover, even if a policy is subject to differing interpretations, State Farm's denial of Mosby's claim would still be "fairly debatable" because State Farm's interpretation of its clause is a reasonable one. This state has not adopted a strict liability approach to erroneous claim denials, and it is not bad faith for an insurer to deny a claim based on a fairly debatable policy interpretation even if that interpretation is not subsequently upheld by the courts. *See Mills v. Regent Ins. Co.,* 152 Wis. 2d 566, 574, 449 N.W.2d 294, 297 (Ct. App. 1989).

## COVERAGE ISSUES

We also affirm the trial court's summary judgment dismissing both Walker's and Mosby's compensatory damages claims. Walker is not entitled to compensatory damages because he breached the concealment clause of the policy. Mosby is not entitled to compensatory damages because the concealment clause unambiguously denies recovery to an innocent insured when another insured breaches the concealment clause.

Walker claims two defenses to State Farm's allegation that he breached the concealment clause. He argues that his constitutional privilege to avoid self-incrimination and his belief that some of State Farm's questions

were not material to the insurance policy justify his refusal to answer some of State Farm's questions. Neither defense saves Walker's compensatory damages claim.

Walker first argues that an insurance company cannot interpret the failure to answer questions as concealment when the insured, following an attorney's advice, invokes the fifth amendment to avoid self-incrimination. Walker claims that he could not answer State Farm's questions in jail because his answers might have incriminated him in the pending extradition proceedings and in any future Colorado trial on the homicide charges. Moreover, Walker claims that he can now answer State Farm's questions because he has been convicted of homicide in Colorado.

The trial court correctly concluded that State Farm did not violate Walker's constitutional right to avoid self-incrimination. The fifth amendment protects a defendant only when it is the state that is the questioner; the state can use the answers in a criminal prosecution. Fear of self-incrimination does not exempt one from contractual duties. "Constitutional immunity has no application to a private examination arising out of a contractual relationship." *Warrilow v. Superior Court,* 689 P.2d 193, 197 (Ariz. Ct. App. 1984) (emphasis omitted).

Walker's claim that he offered to answer State Farm's questions after his trial in Colorado is not sufficient to reverse the trial court's dismissal of Walker's compensatory damages claim. An offer to answer questions about a fire after the insurance carrier has instituted a court action is too late to be meaningful to the insurance company.

Walker's second defense to the breach of contract allegation is that he was justified in refusing to answer some of State Farm's questions because they were not material to the insurance policy. We have two responses. First, Walker concedes that *some* of the questions he refused to answer were material though he excuses his action based on his discredited fifth amendment theory. Thus, he breached the contract when he refused to answer those questions.

Second, we hold that all of the questions Walker refused to answer were material. A material question "concerns a subject relevant and germane to the insurer's investigation as it was then proceeding." *Fine v. Bellefonte Underwriters Ins. Co.,* 725 F.2d 179, 183 (2d Cir.), *cert. denied,* 469 U.S. 874 (1984); *see also Claflin v. Commonwealth Ins. Co.,* 110 U.S. 81, 94–95 (1884). Walker refused to answer questions about his name change. Knowledge of Walker's previous name could have helped State Farm in its arson investigation. Similarly, questions about Walker's financial position were relevant to Walker's possible motives for committing arson. As the trial court noted, other courts have ruled that background questions or financial information are relevant to an insurance claim. *Gipps Brewing Corp. v. Central Mfrs.' Mut. Ins. Co.,* 147 F.2d 6 (7th Cir. 1945); *Kisting v. Westchester Fire Ins. Co.,* 290 F. Supp. 141 (W.D. Wis. 1968), *aff'd,* 416 F.2d 967 (7th Cir. 1969). We reject Walker's claim.

Mosby's claim for compensatory damages attacks both the language and public policy implications of the policy's concealment clause. Mosby argues that the clause is ambiguous. She urges a construction of the

clause which does not preclude an innocent insured from recovery when a co-insured breaches the contract.

An ambiguity exists when the policy is reasonably susceptible of more than one construction from the viewpoint of a reasonable person of ordinary intelligence in the position of the insured. *Northwestern Nat'l Ins. Co. v. Nemetz,* 135 Wis. 2d 245, 255, 400 N.W.2d 33, 37 (Ct. App. 1986). Mosby argues that the concealment clause in the State Farm policy is susceptible of more than one construction because the word "you" is defined in the following way in the definition section of the policy: " 'You' and 'your' mean the 'named insured' shown in the Declarations." Mosby argues that she and Walker were jointly the "named insured" and, thus, that the word "you" in the concealment clause excludes recovery only when the named insureds act jointly to conceal. Mosby proposes the following reading of the concealment clause:

> If *Jimmy J. Walker & Joan K. Mosby* or any other insured under this policy has intentionally concealed or misrepresented any material fact or circumstance relating to this insurance, whether before or after a loss, then this policy is void as to *Jimmy J. Walker & Joan K. Mosby* and any other insured.

We disagree with Mosby's proposed construction of the clause. We do not believe a reasonable person of ordinary intelligence in the position of the insured would read the word "you" in the concealment clause the way the word "you" is defined in the definition clause. *See id.* As State Farm pointed out in its brief for summary judgment, such a reading would lead to an absurd result. If a *non-named* insured in the household, such as a child, breached the contract's concealment clause, the

policy would be void for both *named* insureds. However, if only one *named* insured breached the clause, the policy would not be void for any other insured, whether named or not named. A plain reading of the clause does not support such a construction.

Mosby also argues that even if the concealment clause is unambiguous, a clause precluding recovery for an innocent insured is against public policy. The supreme court has decided that it is against public policy for an insurance company to bar an innocent insured from recovery when the policy does not state whether the obligations of the insureds are joint or several. *Hedtcke v. Sentry Ins. Co.*, 109 Wis. 2d 461, 487–89, 326 N.W.2d 727, 740 (1982). However, the court explicitly stated in *Hedtcke* that "[w]e need not and do not decide whether an insurer may make the obligations of the insureds joint." *Id.* at 488, 326 N.W.2d at 740.

We decline to hold that the concealment clause violates public policy. For a court to declare as a matter of public policy that an insurer may not make the obligations of the insureds joint would be to upset long-established rules of insurance contract interpretation. A court must not modify clear and unambiguous language when construing an insurance policy. *State Farm Mut. Auto. Ins. Co. v. Rechek,* 125 Wis. 2d 7, 9, 370 N.W.2d 787, 789 (Ct. App. 1985). The objective in interpreting and construing a contract is to ascertain the true intention of the parties. *Kraemer Bros., Inc. v. United States Fire Ins. Co.,* 89 Wis. 2d 555, 562, 278 N.W.2d 857, 860 (1979). When the terms of a policy are plain on their face, the policy should not be rewritten by construction to bind the insurer to a risk it was unwilling to cover,

and for which it was not paid. *Garriguenc v. Love*, 67 Wis. 2d 130, 135, 226 N.W.2d 414, 417 (1975).

No matter what this court's opinion is on the public policy issue of this case, it is not within the province of the appeals court to announce a public policy that has the effect of overturning long-established rules of insurance contract jurisprudence. Such a step can be taken only by the state supreme court. Thus, in the instant case, we decline to reverse on public policy grounds the trial court's denial of recovery to the innocent party.

*By the Court.*—Judgment affirmed.