## Steven BIRCHFIELD v. NATIONWIDE INSURANCE

93-731                                                    875 S.W.2d 502

Supreme Court of Arkansas
Opinion delivered May 9, 1994

*Smith, Norwood & Martin, P.A.,* by: *Holly L. Smith,* for appellant.

*Joe Benson,* for appellee.

ROBERT L. BROWN, Justice. Steven Birchfield, the appellant, raises two points in his appeal. He first contends that the trial court erred in granting summary judgment in favor of the appellee Nationwide Insurance because the contractual language relied on by the court to deny benefits is ambiguous. Secondly, he argues that the court's decision violates the public policy of the State. We are not persuaded by either point, and we affirm.

On May 21, 1989, Steven Birchfield, a minor, was a passenger in a car driven by Mr. Holliman. Mr. Holliman was involved in an accident with Mr. Stines. Holliman had liability coverage with policy limits of $25,000. Stines's liability coverage set a limit of $100,000. Birchfield sustained injuries in the accident and claimed damages from Holliman and Stines in excess of $250,000. At the time of the accident, Birchfield had underinsured motorist coverage (UIM) under a policy that Nationwide had issued to his mother, Wanda Birchfield. That policy limited underinsurance coverage as follows:

> No payment will be made until the limits of all other liability insurance and bonds that apply have been exhausted by payments.

Birchfield filed a lawsuit against the liability companies for the two drivers, Holliman and Stines. He settled the joint lawsuit for $75,000, which was substantially less than the policy limits of $125,000 available from the liability insurance of Holliman and Stines. Following that settlement, Birchfield filed a complaint against his carrier, Nationwide, for the policy limits of his underinsured coverage which totaled $25,000. He claimed that since his injuries resulted in damages of $250,000 and that this amount was greater than the combined policy limits of the tortfeasors, Nationwide should honor his claim. Nationwide refused to do so.

Nationwide then moved for summary judgment and contended that because Birchfield settled with the tortfeasors for less than their policy limits, he was not entitled to UIM bene-

fits. Birchfield responded that the limiting UIM language in the insurance contract was ambiguous and, therefore, a question of fact remained unanswered and summary judgment was not appropriate. In the alternative, he urged that if the policy were construed as Nationwide advocated, it would be void as against public policy. The circuit judge entered an order granting summary judgment.

■■ Birchfield first claims that summary judgment was not proper because the UIM language in the policy, which purports to deny coverage unless the limits of all other liability insurance that apply have been "exhausted by payment," is ambiguous. We do not agree. Birchfield is quite correct that summary judgment is a remedy which should only be granted when there are no genuine issues of fact to litigate and when the case can be decided as a matter of law. Ark. R. Civ. P. 56(c); *Forrest City Mach. Works, Inc.* v. *Mosbacher*, 312 Ark. 578, 851 S.W.2d 443 (1993). The burden of sustaining a motion for summary judgment is on the moving party with all doubts and inferences resolved against the moving party. *Forrest City Mach. Works, Inc.* v. *Mosbacher*, supra; *Lovell* v. *St. Paul Fire & Marine Ins. Co.*, 310 Ark. 791, 839 S.W.2d 222 (1992).

■■ Here, however, the plain meaning of the language "exhausted by payments" regarding limits of other liability insurance is that all other available liability insurance must be paid in full before Birchfield is entitled to receive UIM benefits from Nationwide. The language is clear that it is the *limits* of the liability policies that must be paid and "exhausted." As the trial court stated: "the only logical, reasonable and unambiguous definition of 'exhausted by payments' is the payment of money by the insurer of the liability limits and not the action by the insured in compromising and settling at less than the liability limits. . . ." We hold that there is no genuine issue of material fact remaining as to the meaning of this policy language. Because we conclude that there is no ambiguity in the language, it is unnecessary to resort to rules of construction. *Arkansas Kraft Corp.* v. *Boyed Sanders Constr. Co.*, 298 Ark. 36, 764 S.W.2d 452 (1989); *Southern Farm Bureau Casualty Ins. Co.* v. *Williams*, 260 Ark. 659, 543 S.W.2d 467 (1976).

■ Birchfield's second issue is that permitting Nationwide

to avoid paying UIM benefits because the insured has settled with the tortfeasors' carriers for less than the tortfeasors' policy limits is against public policy. *See Shelter Gen. Ins. Co. v. Williams*, 315 Ark. 409, 867 S.W.2d 457 (1993). More precisely, Birchfield's argument is that to construe the contract, as Nationwide suggests, results in his being undercompensated for injuries rather than receiving the assistance that UIM coverage was designed to provide. He points out that even if he had insisted that the two carriers pay their policy limits, Nationwide would still be in the position of having to pay him UIM benefits due to his damages of $250,000. And, finally, because liability here is not clear, he contends that he easily could have received less than the settlement amount had the matter gone to a jury.

The UIM statute in effect at time of the accident was established by Act 335 of 1987 and read in pertinent part:

> Coverage limits shall be equal to the limits of liability provided by the underinsured motorist coverage to the extent the coverage exceeds the *limits* of the bodily injury coverage carried by the owner or operator of the other motor vehicle.

Ark. Code Ann. § 23-89-209(a) (1987) (emphasis ours). Act 1180 of 1993 changed the section to read in part as follows:

> The coverage shall enable the insured or the insured's legal representative to recover from the insurer the amount of damages for bodily injuries to or death of an insured which the insured is legally entitled to recover from the owner or operator of another motor vehicle whenever the liability insurance *limits* of such other owner or operator are less than the amount of the damages incurred by the insured.

Ark. Code Ann. § 23-89-209(a)(3) (1993) (emphasis ours).

Hence, under both Act 335 of 1987 and Act 1180 of 1993 the legislative intent is clear that the inability to obtain the limits of liability coverage is what triggers the availability of underinsured benefits. With respect to Act 1180 of 1993, we are mindful that the accident in this case occurred in 1989. But we have looked to subsequent legislation in the underinsured motorist area to guide us in our interpretation of legislative enactments.

*See American Cas. Co.* v. *Mason*, 312 Ark. 166, 848 S.W.2d 392 (1993); *Shepherd* v. *State Auto Property and Cas. Ins. Co.*, 312 Ark. 502, 850 S.W.2d 324 (1993). We choose to do so again in this case, and look to the expression of legislative intent as set out in Act 1180. We conclude that the public policy of this State was not violated by the trial court's decision.

Affirmed.