# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 03-2133

_____

| | | |
|---|---|---|
| State Automobile Insurance Co., | * | |
| | * | |
| Appellee, | * | |
| | * | |
| v. | * | Appeal from the United States |
| | * | District Court for the Eastern |
| Michael J. Lawrence, | * | District of Arkansas. |
| | * | |
| Appellant. | * | |

_____

Submitted: November 21, 2003

Filed: March 1, 2004

_____

Before WOLLMAN, BYE, and SMITH, Circuit Judges.

_____

SMITH, Circuit Judge.

State Automobile Mutual Insurance Company ("State Auto") sought a declaratory judgment that its insured, Michael J. Lawrence, was not entitled to underinsured motorist ("UIM") coverage under his auto policy. The district court[1] granted summary judgment to State Auto after determining that Lawrence failed to properly make a claim according to the procedures in the policy and under Arkansas law. We affirm.

_____

[1] The Honorable George Howard Jr., United States District Judge for the Eastern District of Arkansas.

## I. *Background*

On May 16, 1998, while driving in Texas, Lawrence's automobile collided with a vehicle driven by Carrie Ledwig. Lawrence filed a personal-injury suit against Ledwig, claiming injuries from the accident. Ledwig maintained a liability policy with Nationwide Insurance Company ("Nationwide") with policy limits of $100,000. Through a settlement finalized on September 28, 2001, Nationwide paid $65,000 to Lawrence. Lawrence executed a release relieving Ledwig and Nationwide from any additional liability.

Lawrence maintained a UIM policy with State Auto with limits of $300,000. On May 14, 2001, State Auto received a letter from Lawrence's legal counsel stating in pertinent part:

> The purpose of this letter is to inform your Company that I have decided, as Mr. Lawrence's Attorney, to attempt, with his authority, to settle his claims against Defendant Ledwig in the above entitled and numbered litigation in Johnson County by making an offer of settlement within the policy limits of the Defendant's available liability insurance coverage (i.e. at or below the $100,000 limits) and to make a claim, on his behalf, under the under-insured motorist provisions of the above-numbered State Automobile Mutual Insurance Policy . . . .

In response, State Auto sent Lawrence's counsel a letter on May 23, 2001, with information detailing Lawrence's duties under the policy for filing a UIM claim. State Auto also sent an Arkansas UIM coverage form and requested that Lawrence provide information about the accident and investigation. State Auto repeatedly attempted to contact Lawrence's counsel to learn the status of the settlement negotiations. State Auto's telephone calls and correspondence through November 2001 went unanswered.

In a letter dated December 4, 2001, Lawrence advised State Auto that he had settled his case against Ledwig in September. Lawrence requested payment of the UIM policy limits of $300,000 within twenty-one days. Lawrence also attached the information regarding the liability claim that State Auto had requested on May 23, 2001. State Auto denied the claim citing Lawrence's failure to comply with the policy's notice requirements and applicable Arkansas law. State Auto then filed a declaratory-judgment action.

State Auto subsequently filed a motion for summary judgment alleging that Lawrence was not entitled to UIM benefits as a matter of law because Lawrence failed to properly file his claim. Lawrence responded that the UIM provisions were ambiguous, State Auto failed to establish harm from the notice delay, and a question of material fact remained as to whether there was substantial compliance with the provisions of the policy. The district court determined that the policy language, modeled after Arkansas Code Annotated section 23-89-209 (Supp. 1997), was not ambiguous. The district court found that the policy clearly detailed the insured's responsibilities to make a claim for UIM benefits and that Lawrence failed to fulfill those responsibilities. Lawrence appealed.

## II. *Standard of Review*

This court reviews de novo the district court's grant of summary judgment, as well as its interpretation of Arkansas law. *Shelter Mut. Ins. Co. v. Maples*, 309 F.3d 1068, 1070 (8th Cir. 2002). Therefore, we apply the same standard as applied by the district court. *United Tel. Co. of Mo. v. Johnson Publ'g Co., Inc.*, 855 F.2d 604, 607 (8th Cir. 1988). We examine the entire record in the light most favorable to the nonmoving party. *Get Away Club, Inc. v. Coleman*, 969 F.2d 664, 666 (8th Cir. 1992). Summary judgment is appropriate when there is no dispute between the parties as to any genuine issue of material fact and when the moving party is entitled to a judgment as a matter of law. Fed. R. Civ. P. 56(c). Therefore, the mere existence of some alleged factual dispute between the parties is not sufficient by itself to deny

summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986). Instead, "the dispute must be outcome determinative under prevailing law." *Holloway v. Pigman*, 884 F.2d 365, 366 (8th Cir. 1989) (citation omitted).

### III. *Analysis*

Lawrence argues that the UIM policy and Arkansas law should not exclude coverage under the facts of this case.[2] We, like the district court, disagree.

Generally, Arkansas law requires that a tortfeasor's liability insurance coverage limits *must be paid in full* before the insured is entitled to UIM benefits. *Birchfield v. Nationwide Ins.*, 875 S.W.2d 502, 504 (Ark. 1994) (applying Ark. Code Ann. § 23-89-209(a)(3)[3]) (emphasis added). Full payment is required because UIM coverage is secondary and supplemental insurance that is always conditional. *Hartford Ins. Co. of the Midwest v. Mullinax*, 984 S.W.2d 812, 815 (Ark. 1999) (citing *Shepherd v.*

---

[2] Specifically, Lawrence argues that the district court erred in construing the policy as clearly excluding coverage under the facts of this case without regard to the issue of harm to State Auto. He argues that controlling Arkansas case law should be limited to its facts and that the district court's "unreasonably narrow construction" of the policy excluded a reasonable third option allowing UIM coverage when an insured provides notice of a proposed below-limits settlement and the UIM carrier elects not to participate in the litigation. In addition, Lawrence argues that the district court erred in failing to require State Auto to show that his failure to strictly or substantially comply with terms of the policy caused any real harm to State Auto or that it resulted in forfeiture of benefits.

[3] Ark. Code Ann. § 23-89-209(a)(3) (Supp. 1997) provides:

(3) The coverage shall enable the insured or the insured's legal representative to recover from the insurer the amount of damages for bodily injuries to or death of an insured which the insured is legally entitled to recover from the owner or operator of another motor vehicle whenever the liability insurance limits of such other owner or operator are less than the amount of the damages incurred by the insured.

*State Auto Prop. & Cas. Ins. Co.*, 850 S.W.2d 324 (Ark. 1993)). Before payment by the UIM carrier is required, both the amount of bodily-injury damages incurred by the insured and the amount of liability-insurance benefits recovered by the insured from the tortfeasor must be known. Ark. Code Ann. § 23-89-209; *Mullinax*, 984 S.W.2d at 815 (citing *State Farm Mut. Auto. Ins. Co. v. Thomas*, 871 S.W.2d 571 (Ark. 1994)).

Arkansas case law emphasizes the necessity of knowing the amount of liability benefits paid. *Mullinax*, 984 S.W.2d at 815; *State Farm Mut. Auto. Ins. Co. v. Beavers*, 901 S.W.2d 13, 16 (Ark. 1995); *Birchfield*, 875 S.W.2d at 504; *Thomas,* 871 S.W.2d at 573. In both the *Beavers* and *Thomas* decisions, the Arkansas Supreme Court noted that the obligation to pay UIM benefits could not be triggered until it was determined that the insured is, in fact, underinsured. *Beavers*, 901 S.W.2d at 16; *Thomas*, 871 S.W.2d at 573. That necessarily entails knowing the extent of the insured's damages and the liability benefits that have been paid by the tortfeasor's carrier. Here, it is undisputed that Lawrence settled his case for $35,000 less than the tortfeasor's policy limits. Pursuant to *Birchfield*, this indicates that Lawrence may not have been underinsured because additional funds were available under the tortfeasor's policy that Lawrence may have recovered.

In this case, however, both the statute and UIM policy provide a mechanism by which an insured can settle for less than the tortfeasor's policy limits and still recover UIM benefits. The pertinent language in State Auto's UIM policy, which echoes the language in section 23-89-209(c), details an insured's obligations when making a claim for UIM benefits. Specifically, when an insured reaches a tentative settlement with a tortfeasor for less than policy limits, both the policy and the statute require that the insured provide notice to the UIM carrier before the settlement is finalized. Consequently, the policy and applicable law required Lawrence to appropriately notify State Auto prior to consummation of a settlement with Ledwig for less than her policy limits. He did not.

Lawrence argues that the policy language is ambiguous. Lawrence asserts that a third alternative exists for coverage when the UIM insurer is given notice of an attempted settlement and the insurer joins in the litigation of the case in order to secure policy limits. Whether the policy is ambiguous is a question of law for the court. *Columbia Ins. Co. v. Baker*, 108 F.3d 148, 149–150 (8th Cir. 1997) (citing *Keller v. Safeco Ins. Co.,* 877 S.W.2d 90, 93 (Ark. 1994)). An exclusion clause is ambiguous if it is "susceptible to more than one reasonable interpretation." *Id.*

Under Arkansas law, insurance policies are to be construed liberally in favor of the insured, and exclusionary language that is susceptible to more than one reasonable interpretation should be construed in favor of the insured. *Canal Ins. Co. v. Ashmore*, 126 F.3d 1083, 1085 (8th Cir. 1997)*; Columbia Ins. Co.*, 108 F.3d at 149; *State Farm Fire & Cas. Co. v. Midgett*, 892 S.W.2d 469, 471 (Ark. 1995); *Noland v. Farmers Ins. Co.*, 892 S.W.2d 271, 272 (Ark. 1995). The insurer bears the burden of proving as a matter of law that the insured's claim was excluded under the policy. *See id.* (citing *Arkansas Farm Bureau Ins. Fed'n v. Ryman*, 831 S.W.2d 133, 134–35 (Ark. 1992)). In order for timely notice to be a condition precedent to coverage, the insurance policy must use language expressly to that effect or language that necessarily implies that the provision is a condition precedent. *Kimbrell v. Union Standard Ins. Co.*, 207 F.3d 535, 536 (8th Cir. 2000) (citing *Hope Spoke Co. v. Maryland Cas. Co.*, 143 S.W. 85, 86–87 (Ark. 1912)). "It is also a long standing rule that, where the terms of the policy are clear and unambiguous, the policy language controls; and absent statutory strictures to the contrary, exclusionary clauses are generally enforced according to their terms." *Noland*, 892 S.W.2d at 272.

In this case, both the UIM policy language and the statute are clear and unambiguous–if an insured seeks UIM coverage, he or she must either actually recover the liability limits *or* provide notice of a tentative settlement and allow the UIM carrier reasonable time (thirty days) to respond to protect its interests. Lawrence's proposed reading of the policy language is untenable in light of these

express requirements. An insured does not satisfy his contractual and statutory duty to give his UIM carrier notice of a tentative settlement with the tortfeasor when his counsel's statement includes only an intent to propose a settlement at some future date.

Furthermore, Lawrence's argument that State Auto was not harmed by his noncompliance must fail. To support this claim, Lawrence argues that *Shelter Mutual Ins. Co. v. Bough*, 834 S.W.2d 637 (Ark. 1992), allows an insured to recover UIM benefits although the insured failed to provide the requisite notice to the UIM carrier. However, in allowing UIM coverage, the *Shelter* court noted that the tortfeasor's liability limits were exhausted, thus necessarily triggering Shelter's UIM policy. *Id.* at 640. Therefore, the court allowed the insured's UIM claim after concluding that the insurer was not prejudiced by the settlement because its subrogation rights were not affected. *Id.*

Lawrence's case is different. Lawrence did not settle his case against Ledwig and Nationwide for policy limits. Furthermore, he failed to allow State Auto to pay him the tentative $65,000 settlement amount so that State Auto, as subrogee, could pursue additional monies under the tortfeasor's policy. Lawrence's settlement extinguished State Auto's ability to protect its subrogation interests in the remaining $35,000 of the $100,000 available under Ledwig's Nationwide policy. As such, *Shelter Mutual Insurance* does not apply.

For the foregoing reasons, we affirm.

_____